IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  LEIGH-ANN JENKS TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIV-14- 896-M |
| | ) | |
| 1.  WAL-MART ASSOCIATES, INC., | ) | |
| a/k/a WAL-MART STORES, INC., | ) | |
| and | ) | |
| 2.  WAL-MART STORES EAST, LP, | ) | |
| | ) | ATTORNEY LIEN CLAIMED |
| Defendants. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW** the Plaintiff, Leigh-Ann Jenks Turner, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1. Plaintiff Leigh-Ann Jenks Turner is an adult female resident of Garfield County, Oklahoma.

2. Defendants are:

a. Wal-Mart Associates, Inc., a/k/a Wal-Mart Stores, Inc., an entity doing business in Garfield County, Oklahoma; and

b. Wal-Mart Stores East, LP, an entity doing business in Garfield County, Oklahoma.

1

**JURISDICTION AND VENUE**

3. This is a cause of action arising out of Plaintiff's former employment with Defendants and is based on claims of (a) violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 in the form of race discrimination, the creation of a racially hostile work environment, and retaliation; and (b) religious discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.

5. All of the actions complained of herein occurred in Garfield County, Oklahoma. Defendants do business in such county and may be served in said county. Garfield County is located in the Western District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about December 13, 2013. Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated June, 16, 2014 (received by Plaintiff by mail thereafter), and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

**STATEMENT OF FACTS**

7. Plaintiff, a Black female, began her employment with Defendants on or about May 11, 2013 as an overnight stocker. Plaintiff worked at the Wal-Mart located in Enid,

Oklahoma.

8.     In her first week on the job, on or about May 16, 2013, Plaintiff asked her co-worker, Jeanise Reynolds, a White female, how a particular work-related procedure was to be performed.  Reynolds responded that Wal-Mart no longer did it a certain way due to "Ni**ers in Virginia."

9.     Plaintiff was extremely offended by the use of a racial slur toward her and reported the comment to her morning supervisor, Trisha Taylor, a White female.  Taylor told Plaintiff to speak with the Store and Regional Manager.  Plaintiff did as she was instructed and also completed a written statement as directed.

10.    Following the May 16, 2013 racial slur event, Plaintiff was off work for approximately three (3) days, during which time she contacted the EEOC about filing a Charge of Discrimination.

11.    Approximately one week later, on or about May 25, 2013, Plaintiff was speaking with one of her co-workers, Linda Swart, a White female, when Swart made a statement that she "didn't understand why White girls wanted to date Ni**ers."

12.    Plaintiff was again extremely offended by the use of the racial slur and reported the same to Overnight Manager Louis Oates, a White male.  Plaintiff also wrote a statement regarding the incident.

13.    Plaintiff was again off work for approximately three (3) days, during which time she again contacted the EEOC about filing a Charge of Discrimination.

3

14. Upon Plaintiff's return to work, she was notified by Taylor and another Overnight Manager, Brian (last name unknown), a White male, that they were going to investigate her complaints, concerning the racially hostile work environment. Despite this, to Plaintiff's knowledge, neither Reynolds nor Swart were disciplined for their misconduct and both are still employed with Defendants.

15. About two (2) weeks later, around mid-June 2013, Plaintiff was called to the office to speak with Taylor. Taylor told Plaintiff that they had concluded the investigation and came to the conclusion that there was no merit to Plaintiff's complaints. In fact, Taylor informed Plaintiff that Plaintiff had, in turn, been accused of being a "devil worshiper." Plaintiff was given no reasoning for such false and egregious accusation.

16. Plaintiff was extremely offended by such accusation as she is a Christian.

17. Also, in or around mid-June 2013, Plaintiff informed Overnight Manager Oates that she had contacted the EEOC and was preparing to file a Charge of Discrimination regarding these events.

18. On or about July 26, 2013, Plaintiff was approached by Overnight Manager Brian (referenced above) who asked if Plaintiff was still in her probationary period. When Plaintiff responded that she believed she was, Brian stated that she needed to move faster or she might not last long. Such comment was in retaliation for Plaintiff's complaints. In fact, Plaintiff had been complimented on her speed by other employees and managers.

19. In an attempt to meet Brian's demands, Plaintiff suffered an on-the-job injury

to her right triceps brachii muscle and had to be taken to the emergency room. Plaintiff's doctor gave her medication and took her off work for a few days.

20. On or about August 26, 2013, Plaintiff's husband underwent back surgery. Plaintiff spoke with Manager Luis (last name unknown) about taking time off to care for her husband. Luis told Plaintiff it would not be a problem and to call in daily to notify her shift that she would not be there. Plaintiff called in for a few nights, then returned to work. However, her husband had to undergo further emergency treatment, and Plaintiff was forced to miss a few more nights. As directed by her supervisor, Plaintiff called in for each absence.

21. On or about September 6, 2013, Plaintiff called in to notify her supervisor that she would be returning to her scheduled shift that night. However, Christina (last name unknown) told Plaintiff that she had been terminated allegedly pursuant to the attendance policy. However, Plaintiff was not informed of such policy or warned about her absences when she called in or otherwise. Such reason for termination was pretext for underlying discrimination and retaliation.

22. As a direct and proximate result of Defendants' actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - Title VII Race Violations

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

23. The matters alleged above constitute violations of Title VII of the Civil Rights

Act of 1964 in the nature of race discrimination, the creation of a racially hostile work environment, and retaliation.

24. Plaintiff is entitled to relief under Title VII because she is Black, was qualified for her job, was terminated, and her position was not eliminated after her termination. Moreover, she complained about the unfair treatment she received and was thereafter retaliated against. And, the unwelcome offensive comments made to Plaintiff created a racially hostile work environment.

25. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

26. Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

## COUNT II - 42 U.S.C. § 1981 Violations

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

27. The matters alleged above constitute violations of 42 U.S.C. § 1981 in the nature of race discrimination, the creation of a racially hostile work environment, and retaliation.

28. As damages, Plaintiff has suffered lost earnings, past and future, emotional

distress and other equitable and non-pecuniary losses.

29. Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### COUNT III - TITLE VII Religious Claims

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

30. The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of religious discrimination and the creation of a religiously hostile work environment.

31. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

32. Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendants and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and

such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 20th DAY OF AUGUST, 2014.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
EMILY VAN VOLKINBURG, OBA#31744
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800     (telephone)
(405) 239-3801     (facsimile)
leonardjb@leonardlaw.net
emilyv@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED
